*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* MCKENDRICK, Minors.

UNPUBLISHED
July 11, 2024

No. 367305
Calhoun Circuit Court
Family Division
LC No. 2017-000947-NA

Before: BOONSTRA, P.J., and CAVANAGH and PATEL, JJ.

PER CURIAM.

Respondent-mother[1] appeals as of right the trial court order terminating her parental rights to the minor children, SAM and SM, under MCL 712A.19b(3)(c)(*i*) (conditions that led to adjudication continue to exist) and (j) (reasonable likelihood of harm if returned to parent). On appeal, respondent challenges only the trial court's best-interest findings. We affirm.

## I. BACKGROUND

SAM and SM have two older half-siblings, NL and AA. A 2011 investigation by Children's Protective Services (CPS) concluded that a preponderance of evidence established respondent improperly supervised and physically neglected AA and NL. An October 2021 CPS investigation concluded that a preponderance of evidence established respondent medically neglected AA and improperly supervised AA, NL, SAM, and SM. In December 2021, NL reported that respondent physically abused the children, used drugs in front of the children, and often left NL alone with SAM and SM. In January 2022, NL reported that respondent physically assaulted the children "with her hand, a hanger, a shoe or whatever is near her." NL also reported that respondent smoked marijuana and was growing marijuana in the home. NL stated that she did not feel safe in the home. AA reported that she was sexually assaulted by one of respondent's

---

[1] Respondent-father's parental rights to SAM and SA were terminated by the same order, but respondent-father is not a party to this appeal. Accordingly, we simply refer to respondent-mother as "respondent" and the father as "the father."

boyfriends, respondent "would always throw things at them," and "her siblings are not safe in the home with her mother." There were also allegations of domestic violence between respondent and her boyfriend.

In February 2022, petitioner, the Michigan Department of Health and Human Services (DHHS), filed a petition requesting that the trial court take jurisdiction over the children under MCL 712A.2(b)(1) (failure to provide proper care and custody due to neglect or abandonment), and (2) (unfit home environment due to neglect), remove the children from respondent's care, and direct placement of SAM and SM with their fictive kin grandmother.[2] The trial court authorized the petition, removed SAM and SM from respondent's custody, and ordered that respondent's parenting time occur via Zoom or video chat until further order of the court.

Following testimony at the combined adjudication bench trial and disposition hearing in May 2022, the court determined that jurisdiction was supported by a preponderance of the evidence, and entered an order of disposition with a goal of reunification. Respondent was ordered to comply with and benefit from the service plan, including "psychological evaluation and follow any and all treatment recommendations, substance abuse treatment, random drug screens, parenting skills, [and] psychiatric evaluation." The court further ordered that respondent's parenting time continue via Zoom or video chat until further order of the court.

Petitioner offered services to respondent, but little benefit was achieved. Respondent continued to engage in behaviors that brought SAM and SM into the court's jurisdiction and was not willing to participate in any inpatient detoxification or rehabilitation programs or an intensive outpatient program. In March 2023, petitioner filed a permanent custody supplemental petition, requesting that the trial court terminate respondent's parental rights to SAM and SM under MCL 712A.19b(3)(c)(i) and (j). Petitioner alleged that respondent missed 17 of her 48 scheduled drug screens, tested positive on all 21 of her completed drug screens, and had a history of abusing marijuana, cocaine, methamphetamine, amphetamines, and alcohol.

A three-day termination hearing was held in July 2023. It was undisputed that respondent was not engaging in services and had very little contact with the DHHS caseworker from December 2022 through May 2023. In May 2023, respondent attended a residential rehabilitation program and was successfully discharged in June 2023. Following her discharge, she was incarcerated for two weeks as the result of several probation violations. Respondent missed 26 drug screens during the case. Of the 22 drug screens she completed, all but one were positive. Her first negative screen was less than one week before the termination hearing. According to a trauma assessment, respondent was in the precontemplative stage of change and it was estimated that it could be a year or more before she exhibited significant changes, assuming that she actively engaged in services during that period. Although respondent had successfully completed rehabilitation and had one negative drug screen, the DHHS caseworker stated that there were still

---

[2] AA's father was awarded sole legal and physical custody of AA in November 2021, and NL's fictive kin grandmother ultimately obtained legal guardianship of NL. Respondent's parental rights to NL and AA were not terminated.

barriers regarding long-term sobriety, mental health, and rebuilding the bond between respondent and the children.

The DHHS caseworker opined that it was in the best interests of the children that respondent's parental rights be terminated and the children remain with their fictive kin grandmother, who was also the legal guardian of NL. The DHHS caseworker testified that SAM and SM had made significant progress since they were removed from respondent's care. The DHHS caseworker opined that allowing respondent more time to participate in services would not be beneficial because SAM and SM were upset not knowing what their future will be and they needed permanency. The DHHS caseworker did not believe that all of the barriers that remained could be addressed in a reasonable amount of time. She further testified that a guardianship was not considered due to the ages of SAM and SM and their need for permanency. The DHHS caseworker applauded respondent's completion of rehabilitation, but emphasized that respondent had only been in the community for two weeks following her discharge from rehabilitation and jail, which was not enough time to gauge her sobriety.

Respondent admitted that she had been addicted to methamphetamine for approximately five years, and acknowledged that it would take time for her to adjust to sobriety. She recognized that her children had been waiting for 543 days for her to get her life in order since they were removed from her care, but she believed that she should be afforded more time to work on her rehabilitation and visitations with the children. She contended she was a good parent, that she had a strong bond with the children, and she was determined to maintain her sobriety.

The trial court concluded there was clear and convincing evidence to support termination respondent's parental rights to SAM and SM under MCL 712A.19b(3)(c)(*i*) and (j), and that it was in the children's best interests to terminate respondent's parental rights. The court provided a detailed summary of the facts it considered, which included respondent's history of substance abuse, the severe psychological trauma the children suffered, the children's bond to their fictive kin grandmother, the ages of the children, the amount of time that had elapsed, and the reasonable likelihood that respondent could make any progress in a reasonable amount of time. The court recognized that respondent loved SAM and SM, but opined that she did not "understand what it means to love children unconditionally." The court stated that respondent blamed the children as opposed to accepting that her own actions caused the issues. The court noted that respondent had been receiving services since 2017 with "very little change other than her recent progress in sobriety, which is very short standing and needs to be proven outside of a rehab environment." Recognizing their need for stability and permanency, the court concluded that it was in SAM's and SM's best interests to terminate respondent's parental rights. This appeal followed.

## II. ANALYSIS

In her sole issue on appeal, respondent argues that the trial court clearly erred by finding that termination of her parental rights was in SAM's and SM best interests. We disagree.

We review a trial court's decision that termination is in a child's best interests for clear error. *In re Atchley*, 341 Mich App 332, 346; 990 NW2d 685 (2022). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In*

*re Sanborn*, 337 Mich App 252, 276; 976 NW2d 44 (2021) (cleaned up). "To be clearly erroneous, a decision must be more than maybe or probably wrong." *In re Ellis*, 294 Mich App 30, 33; 817 NW2d 111 (2011).

"If a trial court finds that a statutory basis for terminating parental rights exists by clear and convincing evidence, it is required to terminate parental rights if it finds from a preponderance of evidence on the whole record that termination is in the children's best interests." *In re Brown/Kindle/Muhammad Minors*, 305 Mich App 623, 637; 853 NW2d 459 (2014) (cleaned up); see also MCL 712A.19b(5). The focus of the best-interest determination is on the child, not the parent. *In re Schadler*, 315 Mich App 406, 411; 890 NW2d 676 (2016). Factors to be considered for purposes of the best-interest analysis include "the child's bond to the parent, the parent's parenting ability, the child's need for permanency, stability, and finality, and the advantages of a foster home over the parent's home." *In re Olive/Metts Minors*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012) (cleaned up). A court may also consider whether it is likely that a child could be returned to a parent's home "within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 249; 824 NW2d 569 (2012). Other relevant factors include "a parent's history of domestic violence, the parent's compliance with his or her case service plan, the parent's visitation history with the child, the children's well-being while in care, and the possibility of adoption." *In re White*, 303 Mich App 701, 714; 846 NW2d 61 (2014). The trial court may also consider a parent's substance abuse problems. *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001). Finally, because a child's placement with a relative militates against termination, see MCL 712A.19a(8)(a), "the fact that a child is living with relatives when the case proceeds to termination is a factor to be considered in determining whether termination is in the child's best interests." *Olive/Metts*, 297 Mich App at 43.

Respondent claims that the children are in "relative placement" and thus the trial court was required to consider that factor in determining whether termination of respondent's parental rights was in the children's best interests. It is undisputed that the children's caregiver is fictive kin. The fictive kin grandmother is not a "relative" as defined by MCL 712A.13a(1)(j)(*i*)[3] and thus the court

---

[3] 712A.13a(1)(j)(*i*) defines "relative" as "an individual who is at least 18 years of age and is":

> (*i*) Related to the child within the fifth degree by blood, marriage, or adoption, including the spouse of an individual related to the child within the fifth degree, even after the marriage has ended by death or divorce, the parent who shares custody of a half-sibling, and the parent of a man whom the court has found probable cause to believe is the putative father if there is no man with legally established rights to the child.

MCL 712A.13a(1)(j)(*ii*) was amended by 2022 PA 200, effective October 7, 2022, to include within the definition of "relative" individuals who are "[n]ot related to a child within the fifth degree by blood, marriage, or adoption but who has a strong positive emotional tie or role in . . . the child's parent's life if the child is an infant, as determined by the [DHHS]." This new definition would not include SAM or SM, who were clearly not "infants" at the time that they were removed from respondent's care and placed with their fictive kin grandmother.

was not required to consider this factor. Nonetheless, the court did consider the children's placement with their fictive kin grandmother:

> The caregiver in this matter has had to take special courses and training on trauma to assist these children with their needs. They're currently placed with a sibling's sister; they're bonded well to their care giver and their sister. Testimony is it would be extremely detrimental to remove them from that environment.

Respondent further contends that the trial court's best-interest decision was flawed because it failed to consider whether SAM and SM should have been placed in a guardianship with their fictive kin grandmother to afford respondent additional time to complete services and work toward reunification.[4] Contrary to respondent's assertions, the trial court considered whether a guardianship would be appropriate and concluded that it would not be. The appointment of a guardian is generally done in an effort to avoid termination of parental rights. *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). However, as this court recognized in *In re* TK, a guardianship is not necessarily permanent:

> The court is required to review the guardianship annually and may conduct additional reviews, if necessary. MCL 712A.19a(11). Under MCL 712A.19a(13), the court may, on its own motion or upon petition from the Department of Human Services or the child's lawyer guardian ad litem, hold a hearing to determine whether a guardianship shall be revoked. Under MCL 712A.19a(14), a guardian may petition the court for permission to terminate the guardianship. Even the parent has the ability to seek termination of the guardianship. MCR 3.979(F)(1)(b) provides that "[a] juvenile guardian *or other interested person* may petition the court for permission to terminate the guardianship." (Emphasis added.) Further, while the guardian assumes the legal duties of a parent pursuant to MCL 712A.19a(8) and MCL 700.5215, the parent is still under many circumstances permitted to maintain a relationship with the child. [*Id*.]

"[T]he appointment of a guardian is only appropriate after the court has made a finding that the child cannot be safely returned to the home, yet initiating termination of parental rights is clearly not in the child's best interests." *Id*. at 707 (citation omitted). Nonetheless, a trial court may only appoint a guardian if "it is in the [children's] best interests to appoint a guardian." *Id*. (citations omitted). A guardianship may be appropriate when "an ongoing relationship with [the parent]— rather than termination—is in the children's best interests." *In re Mason*, 486 Mich 142, 169; 782 NW2d 747 (2010).

In this case, SAM and SM had already been placed with their fictive kin grandmother for over 17 months. Respondent failed to make any effort to obtain sobriety until nearly 15 months

---

[4] Respondent maintains that SAM and SM should have been placed in a guardianship with their fictive kin grandmother until their father "was able to provide for them." But the trial court terminated the father's parental rights to SAM and SM. Respondent does not have standing to raise on appeal issues regarding the termination of the father's parental rights, as those rights are personal to him. See *In the Matter of Campbell*, 129 Mich App 780, 784; 342 NW2d 607 (1983).

after the removal of the children from her care. And the trauma assessment reflected that it would be a year or more before respondent exhibited significant changes, assuming that she actively engaged in services during that period. The DHHS caseworker testified that a guardianship would not be in the children's best interests because the children had disclosed a desire for permanence and they would like to know that they were permanently staying with their fictive kin grandmother. The trial court rejected the possibility of continuing the guardianship because it found more compelling the children's needs for stability, permanency, and finality. From this record, we conclude that the trial court properly determined that continuing the guardianship in lieu of terminating respondent's parental rights to SAM and SM was not a viable option.

Respondent further argues that termination is not in SAM's and SM's best interests because respondent is bonded with her children, completed her parenting class, and overcame her drug addiction. Respondent maintains that she should have been afforded more time and assistance toward reunification. We applaud respondent's sobriety efforts. But respondent has received services since 2017 with very little change until 2023. For the majority of this case, respondent refused to make efforts to address her substance abuse issues. All but one of respondent's drug screens were positive prior to the termination hearing. Her first negative drug screen was less than one week before the termination hearing. Respondent only began participating in rehabilitation services after the supplemental petition was filed. At the time of the termination hearing, respondent had only been out of rehabilitation and jail for two weeks and her conversations with the DHHS caseworker demonstrated that she still had not accepted responsibility for her actions. The trauma assessment concluded that respondent was in the precontemplative state of change and it would be a year or more before positive changes would manifest. Further, respondent was not engaging in services and had very little contact with the DHHS caseworker from December 2022 through May 2023. Respondent had ample time to make changes and take advantage of a variety of services that were available, but failed to do so until the eleventh hour. Because of SAM's and SM's need for permanency, stability, and finality, they cannot wait in limbo for positive changes to potentially manifest.

The trial court carefully reviewed the evidence that weighed in favor of not terminating respondent's parental rights, such as the bond between respondent and the children and that the children are placed with their fictive kin grandmother and their half-sibling. But the court determined that respondent's substance abuse, mental health problems, and her inability to appropriately parent the children outweighed those other factors. We conclude that the trial court did not clearly err by finding that termination of respondent's parental rights was in the best interests of SAM and SM.

Affirmed.

/s/ Mark T. Boonstra
/s/ Mark J. Cavanagh
/s/ Sima G. Patel